IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| | | Criminal Action No. RDB-08-565 |
| DANNY JONES, | * | Civil Action No. RDB-16-1749 |
| *Defendant.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This case arises out of events in Cumberland, Maryland, on the evening of June 28, 2008. Petitioner Danny Jones, along with Ray Blanks and a third accomplice, drove to Cumberland from Petersburg, Virginia, and entered the family home of a man and a woman and her two children, demanding money and drugs. Using handguns, Jones and his accomplices beat and bloodied the man.

Jones was indicted by Grand Jury on four counts: (1) conspiracy to interfere with commerce by robbery and extortion in violation of 18 U.S.C. § 1951(a); (2) interference with commerce by robbery in violation of 18 U.S.C. § 1951(a); (3) conspiracy to possess firearms in furtherance of a crime of violence in violation of 18 U.S.C. § 924(o); and (4) use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). On July 10, 2009, a jury convicted Jones on all counts. (ECF No. 104.) On November 23, 2009, this Court sentenced Jones to a total of 240 months of imprisonment. (ECF No. 179.)

Jones filed a timely appeal of this Court's Judgment on January 4, 2010. (ECF No. 184.) After that appeal was denied, Jones commenced the filing of various mitigating motions with this Court. Pending before this Court are three motions filed by Jones: a Motion to Vacate

1

Sentence under 28 U.S.C. § 2255 ("§ 2255 Motion") (ECF No. 310); a Motion to Supplement the § 2255 Motion (ECF No. 334); and a Motion for Compassionate Release (ECF No. 367). Also before this Court is the Government's Motion for Extension of Time to File a Response to Jones's § 2255 Motion (ECF No. 342.)

While Jones's § 2255 Motion was previously held in abeyance pending the Fourth Circuit's decision in *United States v. Pyos*, No. 17-4269, 2022 U.S. App. LEXIS 34288, 2022 WL 17592130 (4th Cir. Dec. 13, 2022) (ECF No. 377), that case has now been resolved. As such, it is no longer appropriate to hold Jones's pending § 2255 Motion in abeyance. The Government has not responded to Jones's Motion for Compassionate Release (ECF No. 367.) However, this Court determines that a response is not necessary. The parties' submissions have been reviewed and no hearing is necessary. Loc. R. 105.6 (D. Md. 2023). For the reasons discussed below, (1) Petitioner Danny Jones's Motion to Supplement his § 2255 Motion (ECF No. 334) is **GRANTED**; (2) Jones's Motion to Vacate Sentence under 28 U.S.C. § 2255 (ECF No. 310) is **DENIED**; (3) the Government's Motion for Extension of Time to File Response (ECF No. 342) is **GRANTED**; and (4) Jones's Motion for Compassionate Release (ECF No. 367) is **DENIED**.

## BACKGROUND

On the evening of June 24, 2008, Petitioner Danny Jones and two others, Corey Adams and Ray Blanks, drove from Petersburg, Virginia, to a private residence in Cumberland, Maryland where Samuel Butler lived with his girlfriend, Christi Elliot, and her nineteen-year-old son, Nathan Elliot, and twelve-year-old daughter. (ECF No. 300 at 2.) Jones and Blanks awakened Nathan and held him at gunpoint, demanding that Nathan tell them where Butler

2

was. (*Id.*) Next, Jones and Blanks searched for money while dragging Nathan around the house at gunpoint. (*Id.* at 2–3.) The two then forced Nathan to lie face down on the floor as they continued their search. (*Id.* at 3.) Shortly thereafter, Elliot returned to the house. Jones and Blanks attacked her, demanding money and drugs. (*Id.*) As Nathan remained lying face down on the first floor, Jones and Blanks took Elliot upstairs and strip-searched her, finding money and drugs on her body. (*Id.*) The pair then forced Elliot to call Butler to ask him to come home, but Elliot was unable to reach him. (*Id.*) Shortly before 9:00 a.m. the next day, Butler walked into the residence; Jones and Blanks immediately beat Butler with their handguns. (*Id.*) Butler managed to retrieve his own handgun from the sofa and proceeded to fire two shots at Jones and Blanks, missing them both. (*Id.*) The pair then fled through the back door of the home and ran down the alley. (*Id.*) Butler fired three more shots, striking Jones twice. (*Id.*) Bleeding heavily, Butler collapsed in the street as Blanks, Jones, and Adams fled by car. (*Id.*)

On December 9, 2008, a federal grand jury indicted Jones and co-defendants Blanks and Adams. (Indictment, ECF No. 1.) On July 10, 2009, a jury convicted Jones of four counts: (1) conspiracy to interfere with commerce by robbery and extortion in violation of 18 U.S.C. § 1951(a); (2) interference with commerce by robbery in violation of 18 U.S.C. § 1951(a); (3) conspiracy to possess firearms in furtherance of a crime of violence in violation of 18 U.S.C. § 924(o); and (4) use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). This Court sentenced Petitioner to a total of 240 months' incarceration as a result of his convictions—125 concurrent months for each of Counts One, Two, and Three, and 115 consecutive months for Count Four. (ECF No. 182.)

Jones appealed his conviction to the United States Court of Appeals for the Fourth

Circuit (ECF No. 184), arguing that this Court impermissibly enhanced his sentence for brandishing a firearm with respect to his § 924(c) conviction (Count Four). Jones' convictions and sentences were affirmed on appeal. (ECF No. 262.)

More than two years later, on November 4, 2013, Jones filed a Motion to Vacate under 28 U.S.C. § 2255. (ECF No. 282.) In that motion, Jones argued that his conviction on Count Four should be vacated because the jury did not find that he brandished his firearm, and that as such, the Supreme Court's interceding ruling in *Alleyne v. United States*, 570 U.S. 99 (2013), applied retroactively and demanded a sentence reduction. (*Id.*) This Court denied Jones's Motion to Vacate on September 23, 2015. (ECF No. 305.) Jones then filed a second Motion to Vacate under 28 U.S.C. § 2255 ("§ 2255 Motion") on May 31, 2016, arguing that the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), mandates a vacatur of Jones's sentence. (ECF No. 310.) Jones filed a Motion to Supplement his § 2255 Motion on August 16, 2019, to address the Supreme Court's decision in *United States v. Davis*, 588 U.S. 455 (2019), which rendered the residual clause of 18 U.S.C. § 924(c)(3) void for vagueness. The Government filed a Motion for Extension of Time to File Response on September 6, 2019, and a second Motion for Extension of Time to File Response on September 12, 2019. (ECF Nos. 338, 342.) The Government then filed its response on September 17, 2019. (ECF No. 344.) Jones replied to the Government's response that same day. (ECF No. 347.)

With these motions still pending, on May 9, 2022, Jones filed a *pro se* Motion for Compassionate Release, arguing that his situation presents "extraordinary and compelling reasons" for a sentence reduction, that the 18 U.S.C. § 3553(a) sentencing factors favor such a reduction, and that he has already overserved the portion of his sentence that has not clearly

been made illegal by *Davis* and that thus a decision on his motion should be expedited. (ECF No. 367.) Jones filed a Motion to hold his § 2255 Motion in abeyance on September 20, 2022, pending a ruling in *United States v. Pyos*, No. 17-4269, 2022 U.S. App. LEXIS 34288 (4th Cir. Dec. 13, 2022). (ECF No. 375.) This Court granted that motion on the same day it was filed. (ECF No. 377.) On July 29, 2023, Jones's public defender filed a Motion to Withdraw as Attorney in the § 2255 proceeding, in the wake of the Fourth Circuit's rulings in *United States v. Ali*, 991 F.3d 561, 574 (4th Cir. 2021), and *United States v. Said*, 26 F.4th 653 (4th Cir. 2022). (ECF No. 378.) That motion was granted by this Court on July 31, 2023. (ECF No. 379.)While the Government has not responded to the recently filed Motion for Compassionate Release, no response is necessary. The motions (ECF Nos. 310, 334, 342, 367) are ripe for review.

## STANDARD OF REVIEW

### I.  Motion to Supplement § 2255 Motion

Under Federal Rule of Civil Procedure 15(d), "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). The standard is liberal in favor of granting such motions. *See, e.g.*, *Ford v. United States*, Nos. RDB-09-219, RDB-16-2308, 2024 U.S. Dist. LEXIS 116197, at *21 (D. Md. July 2, 2024); *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002) ("[L]eave should be freely granted, and should be denied only where good reason exists . . . such as prejudice to defendants." (internal quotation marks and citation omitted)). Where a motion to supplement is in the interests of justice, does not unduly prejudice either party, is not sought in bad faith, and falls within the scope of Rule 15(d), it is duly granted. *Clarke v. UFI, Inc.*, 98

F. Supp. 2d 320, 328 (E.D.N.Y. 2000).

## II. Motion to Vacate Under § 2255

Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

It is well settled that a § 2255 motion is not a means to circumvent a proper ruling on appeal. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). A § 2255 motion does not enable the defendant to "recast, under the guise of collateral attack, questions fully considered by [the Circuit Court on direct appeal]." *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). Furthermore, in general, "claims not raised on direct appeal may not be raised on collateral review." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Thus, a petitioner may raise novel claims only where the petitioner demonstrates both "cause" and "actual prejudice." *Bousley v. United States*, 523 U.S. 614, 622 (1998).

## III. Motion for Extension of Time to File a Response

"When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or . . . on motion made after the time

has expired if the party failed to act because of excusable neglect." Fed R. Civ. P. 6(b)(1). *See, e.g., Lamb v. Grosklags*, No. PX 16-02705, 2017 U.S. Dist. LEXIS 125801, at *2–3 (D. Md. Aug. 9, 2017). As with a motion to supplement, a motion for extension of time should be liberally granted. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

### IV. Motion for Compassionate Release

As Petitioner has filed his Motion for Compassionate Release *pro se*, his Motion will be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison. Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court. With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a sentence reduction. The Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" warranting a reduction and after weighing the factors presented in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i).

## ANALYSIS

### I.  Motion to Supplement § 2255 Motion

As noted above, the standard for granting a motion to supplement liberally favors the granting of such motions, "[o]n motion and reasonable notice." Fed. R. Civ. P. 15(d). Leave should be freely granted, save where a good reason exists not to grant it. *See Franks*, 313 F.3d at 198. Such reasons might include where the granting of the motion would unduly prejudice either party, where the motion is sought in bad faith, or where justice counsels against its granting. *See Clarke*, 98 F. Supp. 2d at 328.

Here, granting Petitioner's motion to supplement would not prejudice the Government. Additionally, the Government has not opposed the granting of the motion. There is no evidence that Petitioner filed the motion in bad faith. Indeed, Petitioner indisputably filed the motion to address case law which had arisen since Petitioner first filed the § 2255 Motion. Thus, Petitioner's Motion to Supplement the instant § 2255 Motion is GRANTED.

### II.  Motion to Vacate Sentence Under § 2255

Through the pending § 2255 Motion (ECF No. 310) and supplemental filing (ECF No. 342), Jones challenges his conviction under Counts Three and Four of the Indictment, which charged him respectively with conspiracy to possess a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(o), and possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). Section 924(c) prohibits possessing a firearm "during and in relation to" any federal "crime of violence." 18 U.S.C. § 924(c)(1)(A). Section 924(c) defines "crime of violence" as one "(A) [that] has as an element the use, attempted use,

8

or threatened use of physical force against the person or property of another" (the "force clause"), or "(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "residual clause"). 18 U.S.C. § 924(c)(3). In *United States v. Davis*, 588 U.S. 445 (2019), the Supreme Court held that the residual clause of § 924(c)(3) was unconstitutionally void for vagueness. Convictions and sentences based on the residual clause's definition of "crime of violence" are thus invalid. *Id.* at 448. In brief, Jones contends that his 18 U.S.C. § 924(c) and § 924(o) convictions are infirm because the jury did not specify whether they rested on Hobbs Act conspiracy or substantive Hobbs Act robbery. As such, it is alleged, this Court must assume the predicate is the lesser of the two offenses, Hobbs Act conspiracy. (ECF No. 310 at 2 n.1.) Because Hobbs Act conspiracy does not qualify as a crime of violence under the force clause of § 924(c)(3), and because convictions under the residual clause alone have been deemed unconstitutional, Petitioner argues that it follows that his sentence under Counts Three and Four must be vacated. (ECF Nos. 310, 334-1, 347.)

While it is true that in the wake of *Johnson v. United States*, 576 U.S. 591 (2015), and its progeny the Fourth Circuit has determined that conspiracy to commit Hobbs Act robbery is not a crime of violence for purposes of § 924(c), substantive Hobbs Act robbery continues to qualify as a valid § 924(c) predicate. *United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019) (holding that Hobbs Act robbery is a crime of violence which "has as an element the use, attempted use, or threatened use of physical force" such that it falls within the "force clause" in § 924(c)(3)(A)); *United States v. Ali*, 991 F.3d 561, 574 (4th Cir. 2021), cert. denied, 142 S. Ct.

486 (2021); *United States v. Said*, 26 F.4th 653 (4th Cir. 2022)[1]; United *States v. Pyos*, 2022 U.S. App. LEXIS 34288, 2022 WL 17592130, at *2 (4th Cir. Dec. 13, 2022) (reaffirming that completed Hobbs Act robbery qualifies as a crime of violence under the force clause). Additionally, when a defendant's § 924(c) conviction is "expressly based on [both a] valid and invalid predicate," the conviction "remains sound." *United States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021); *United States v. Ogun*, No. 16-7450, 2022 U.S. App. LEXIS 7608, 2022 WL 843899, at *2 (4th Cir. Mar. 22, 2022) (citing *Crawley*, 2 F.4th at 263).

In other words, to remain valid, Jones's § 924(c) conviction must be predicated—at least in part—on substantive Hobbs Act robbery. After Jones pleaded not guilty, the jury found Jones guilty on both Count One, conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), and Count Two, Hobbs Act robbery in violation of 18 U.S.C. § 1951(a). The Verdict Form then states:

> If you find . . . Danny Jones guilty as to Count One, Count Two, or both Counts One and Two, you may continue and render a verdict as to Count Three and Four.
> If, however, you find . . . Danny Jones not guilty as to Count One and Count Two, you may skip Counts Three and Four.

(ECF No. 104.) As the jury found Jones guilty as to both Counts One and Two, either of Counts One or Two alone could have served as valid predicate for convictions on Counts Three and Four, insofar as 18 U.S.C. § 924(c) allowed either offense to serve as a predicate for Jones's § 924 convictions. As noted in *Crawley*, where a defendant's § 924(c) conviction is "expressly based on [both a] valid and invalid predicate," it "remains sound following *Johnson*

---

[1] Recognizing the untenability of arguments made prior to *Ali* and *Said*, Jones's counsel filed a motion to withdraw on July 29, 2023. Jones therefore proceeds with his § 2255 motion pro se.

and its progeny." 2 F.4th at 263. While *Johnson* and *Davis* have rendered the residual clause of § 924(c) void for vagueness, Jones's substantive Hobbs Act robbery conviction in Count Two serves as an express, valid predicate.

In summary, despite Jones's assertions to the contrary, this Court finds that Jones's convictions on Counts Three and Four were validly predicated upon substantive Hobbs Act robbery. Jones was found guilty of Hobbs Act robbery under Count Two. Such a conviction qualifies as a "crime of violence" within the meaning of § 924(c).

Having found that Jones's § 924(c) conviction was validly predicated on his substantive Hobbs Act robbery conviction, an offense that categorically qualifies as a crime of violence under the "force clause" in § 924(c)(3)(A) and remains a valid predicate, the Court upholds his conviction. Jones asserts no other legitimate basis for collateral review under § 2255. Accordingly, his motion to vacate (ECF No. 310) is **DENIED**.

### III.   Motion for Extension of Time to File a Response

A motion for extension of time should be liberally granted at the court's discretion, where the motion is timely filed and good cause exists. Fed R. Civ. P. 6(b)(1). A motion is timely filed when it is filed "before the original time or its extension expires." *Id.* District courts often grant such request where the motion was not made in bad faith and where no prejudice to the other party occurs as a result of granting the motion. *See Tindall v. First Solar*, 892 F.3d 1043, 1048 (9th Cir. 2018).

Here, the Government timely filed its first motion for extension of time to file a response on September 6, 2019. (ECF No. 338.) This Court granted an extension until September 12, 2019. (ECF No. 339.) The Government then timely filed a second motion for

extension of time to file a response on September 12, 2019, requesting a five-day extension due to its "other responsibilities." (ECF No. 342 ¶ 5.) The Government filed its response on September 17, 2019, in line with its proposed amended deadline. (ECF No. 344.) There is no evidence that the Government filed its motion in bad faith. Additionally, Petitioner's counsel does not object to the granting of the motion. (ECF No. 342 ¶ 6.) This Court sees no reason to deny the Government's motion, where no bad faith exists, Petitioner does not object, and where no prejudice would result from granting the motion. Thus, the Government's Motion for Extension of Time to File Response (ECF No. 342) is **GRANTED**.

> IV. **Motion for Compassionate Release**

As noted above, once the administrative exhaustion requirement is met, the granting or denial of a petitioner's motion for compassionate release hinges on a Court's finding of "extraordinary and compelling circumstances" to justify such a release, weighed against the sentencing factors of 18 U.S.C. § 3553(a).

> > a. **Jones Satisfies the Administrative Exhaustion Requirement of 18 U.S.C. § 3582(c)(1)(A).**

Jones has demonstrated that he exhausted the administrative remedies prescribed in § 3582(c)(1)(A). One of the mandatory conditions laid out in § 3582(c)(1)(A) requires a petitioner to demonstrate that "[he] has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). In his Motion for Compassionate Release, Jones states that he requested that the Warden at USP Lee file a reduction of sentence request on his behalf, and that this request was denied more than thirty days prior to filing his Motion. (ECF No. 367 at 6–7.) Assuming

the truth of Jones's claim, which the Government has not refuted, Jones has satisfied the administrative exhaustion requirement prescribed in § 3582(c)(1)(A).

### b. Jones Fails to Raise Extraordinary and Compelling Circumstances to Justify a Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A).

Jones fails to present extraordinary and compelling reasons to support his compassionate release. Under 18 U.S.C. § 3582(c)(1)(A), the United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). For example, the Commission has determined that the medical circumstances of a defendant can constitute an "extraordinary and compelling reason," where a defendant is "suffering from a serious physical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). A defendant who proves he "suffer[s] from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death" also establishes the existence of an extraordinary and compelling reason. U.S.S.G. § 1B1.13(b)(1)(C).

Courts' analyses regarding motions for compassionate release filed *pro se* were formerly unconstrained by the Sentencing Commission's guidelines and Bureau of Prison regulations. *See United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (holding that U.S.S.G. § 1B1.13 is not an "applicable policy statement" for compassionate release motions filed by a defendant in the wake of the First Step Act). However, amendments to U.S.S.G. § 1B1.13 in 2023 explicitly made the § 1B1.13 Policy Statement apply to such *pro se* motions. *See United States v.*

13

*Davis*, No. 21-7325, 2024 U.S. App. LEXIS 9399, at *7 (4th Cir. Apr. 18. 2024); *United States v. Taylor*, No. ELH-12-0570, 2023 U.S. Dist. LEXIS 222428, at *10 (D. Md. Dec. 14, 2023); *United States v. Robinson*, No. ELH-18-17, 2024 U.S. Dist. LEXIS 81817, at *14 (D. Md. May 6, 2024). As such, courts are now more constrained in determining what constitutes an "extraordinary and compelling" reason for compassionate release on motions filed *pro se* by a defendant: A court must now ensure that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Policy Statement declares in part that:

> Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)
>
>> (A) extraordinary and compelling reasons warrant the reduction; or
>>
>> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(a). The Policy Statement then offers six circumstances in which "extraordinary and compelling reasons" can be found, one of which is the medical circumstances of the defendant. U.S.S.G. § 1B1.13(b).

Additionally, the 2023 amendments to U.S.S.G. § 1B1.13, particularly U.S.S.G. § 1B1.13(b)(1)(D), reinforce prior holdings of this Court that a defendant's heightened susceptibility to COVID-19 may constitute an extraordinary and compelling reason for a sentence reduction. *See, e.g.*, *Davis*, 2024 U.S. App. LEXIS 9399, at *7. Per U.S.S.G. § 1B1.13(b)(1)(D):

> The defendant presents the following circumstances—
>
> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D). However, as Judge Hollander of this Court has noted, "the coronavirus is 'not tantamount to a get out of jail free card.'" *United States v. Hiller*, No. ELH-18-0389, 2020 WL 2041673, at *4 (D. Md. Apr. 28, 2020) (quoting *United States v. Williams*, No. PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020)). Accordingly, for COVID-19 to constitute an "extraordinary and compelling" circumstance, the defendant must prove that he has a "particularized susceptibility" to COVID-19. *See, e.g.*, *United States v. Petway,* No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022). The defendant must also prove that his "risk of contracting COVID-19 is higher in prison than outside of prison." *Davis*, 2024 U.S. App. LEXIS 9399, at *10–11.

Here, Jones fails to demonstrate extraordinary and compelling reasons to support the granting of his motion for compassionate release. In his Motion for Compassionate Release, Jones advances two major arguments: First, that due to the Bureau of Prisons' mishandling of the COVID-19 pandemic, plus ongoing threat of COVID outbreaks combined with Jones's chronic health problems, his motion should be granted; second, that the chronic health problems alone present an extraordinary and compelling reason in favor of granting Jones's motion.

Federal mishandling of the COVID-19 pandemic is not enough to demonstrate that Jones himself has a "particularized susceptibility" to COVID such that a release or sentence reduction is mandated. Indeed, to hold as much would be to sanction a release or sentence reduction for all inmates housed in Bureau of Prison facilities which have admitted to mishandling the pandemic, which for obvious reasons this Court is unwilling to do. The persistent threat of a COVID outbreak at USP Lee, where Jones is housed, holds no bearing on Jones's motion for compassionate release, inasmuch as all USP Lee inmates are exposed to the same risk. That USP Lee chooses to house all of its potentially COVID-positive inmates in the same unit to decrease the spread of the virus, as noted by Jones in his motion, also introduces no additional implications for Jones unless Jones can demonstrate that he is at a significantly greater risk of experiencing severe complications due to COVID-19 infection than other, similarly treated inmates. Jones fails to demonstrate in his motion that such serious complications would result from his being infected by COVID-19. That Jones suffers from "painful stomach problems resulting from a previous gunshot wound" and that it is "well documented that [Jones] has had to resort to lingering in severe paid [sic] while waiting for

16

prison staff to get him to a hospital to treat his chronic condition" falls far short of demonstrating that Jones's chronic condition places him at an increased susceptibility of complications due to COVID-19 infection.

Jones's chronic stomach condition alone, too, is insufficient grounds for granting Jones's motion. Jones cites *United States v. Torres*, No. 19-cr-20342-BLOOM, 2020 WL 4019038 (S.D. Fla. July 14, 2020) (granting a motion for compassionate release where an inmate was determined to be at increased particularized risk of complications from an ongoing COVID-19 infection due to persistent medical issues, after that inmate had served only five months of a twenty-four-month sentence) and *United States v. Beck*, 425 F. Supp. 3d 573 (M.D.N.C. 2019) (granting a motion for compassionate release where an inmate serving a sentence for drug and firearms offenses received repeated, inadequate care for cancer in her left breast, allowing that cancer to spread to her right breast and lymph nodes) to support his claims that granting his motion for compassionate release would not constitute an overstepping of bounds. Jones's circumstances, however, are far different from those of either Torres or Beck. As noted above, Jones has not demonstrated a particularized susceptibility to complications arising from a COVID-19 infection, as did Torres. Additionally, Torres's motion was filed *while he was suffering from* COVID-19, with demonstrably particularized consequences. The case is simply inapposite here. As for *Beck*, the long-term effects of the stomach pain Jones experiences due to delays in care, upon all present evidence, pales in comparison to the long-term effects Beck would have experienced had she remained in prison and her cancer been allowed to spread due to continued inadequate medical care. This Court has denied motions for compassionate release in far more serious medical situations—and with far more evidence to substantiate the

17

claims—than the situation outlined by Jones here. *See United States v. Dinkins*, No. CR RDB-06-0309 (D. Md. July 8, 2024). Jones thus fails to demonstrate extraordinary and compelling reasons which convince this court that granting his motion for compassionate release is merited. Thus, Jones's Motion for Compassionate Release (ECF No. 367) is **DENIED**.

### c. The 18 U.S.C. § 3553(a) Factors Do Not Support Jones's Early Release.

Even if Jones had demonstrated extraordinary and compelling reasons to support the granting of his motion, the 18 U.S.C. § 3553(a) factors do not support Jones's early release. Once a court has determined the existence of extraordinary and compelling reasons warranting a reduction in Jones's sentence, it must consider whether a sentence reduction is consistent with the applicable 18 U.S.C. § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(2); *United States v. Robinson*, No. ELH-18-17, 2024 U.S. Dist. LEXIS 81817, at *12 (D. Md. May 6, 2024). These factors require this Court to consider "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed, [including] to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct, to protect the public, and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment"; (3) "the kinds of sentences available"; (4) the applicable sentence and sentencing range; (5) "any pertinent policy statement," including those issued by the Sentencing Commission; (6) "the need to avoid unwarranted sentencing disparities among defendants with similar records"; and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a).

A sentence reduction is inappropriate in the instant case after considering the § 3553(a)

18

factors. Along with his accomplices, Jones drove from central Virginia to northern Maryland to rob a man at his family's residence. Jones and his accomplices held a gun to the man's girlfriend's son and the man's girlfriend, strip-searched the girlfriend, took money and drugs from the residence, and beat the man bloody when he came home the next morning. That the man being robbed was a known drug dealer does not excuse such behavior. The nature and circumstances of the offense thus counsel for the denial of Jones's motion for compassionate release.

Upholding Jones's original sentence is also necessary to reflect the seriousness of the offense and promote respect for the law, to deter criminal conduct, and to protect the public. It is commendable that Jones has had no violent incidents while imprisoned and that he has completed educational and vocational courses. By all accounts, Jones has matured. But it would make little sense to cut Jones's sentence nearly in half because Jones suffers from stomach pain due to complications from a gunshot injury sustained while Jones was fleeing from the very robbery which is the subject of Jones's conviction. Accordingly, Jones's Motion for Compassionate Release (ECF No. 367) is **DENIED**.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion to Supplement ECF No. 310 (ECF No. 334) is **GRANTED**; Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 310) is **DENIED**; Petitioner's Motion for Compassionate Release (ECF No. 367) is **DENIED**; the Government's Motion for Extension of Time to File a Response (ECF No. 342) is **GRANTED**.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255,

the Court is required to issue or deny a Certificate of Appealability when it enters a final order adverse to the applicant. *See Jackson v. United States*, No. PJM-12-421, 2012 WL 869080, at *1 (D. Md. Mar. 13, 2012). "A Certificate of Appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, the petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463, U.S. 880, 893 n.4 (1983)). Because Jones's motions provide no basis for issuance of a Certificate of Appealability, a Certificate of Appealability is **DENIED**.

A separate Order follows.

Dated:     August 1, 2024

/s/
_____
Richard D. Bennett
United States Senior District Judge